KEITH LANDRIGAN and MARGARET LANDRIGAN, Plaintiffs

v.

WILLIAM R. OPELLE, FRANCES K. OPELLE, and SAMOA
BOTTLING CORPORATION OF SAMOA, Inc., Defendants

High Court of American Samoa
Trial Division

CA No. 49-85

September 17, 1987

Before REES, Chief Justice, VAIVAO, Associate
Judge, and TUIAFONO, Associate Judge.

Counsel: For Plaintiffs, John Ward
For Defendants, Charles Ala'ilima

Opinion and Order on Motion to Enforce Writ of
Garnishment:

Plaintiffs were awarded a judgment of $51,243.74 against defendants Frances Opelle and Samoa Bottling Corporation. William Opelle, the husband of Frances and the co-owner of the corporation, was dismissed from the case because he had received a discharge in bankruptcy. The Opelles have removed to California. Plaintiffs served a writ of garnishment on Suhayl Alai, who manages Mrs. Opelle's property in American Samoa, demanding that the rents he receives from the property be paid to them until their judgment has been satisfied.

Mr. Alai admits that he receives rents on three properties belonging to Mrs. Opelle. The rent on one property is $2000 per month, on a second property about $750 per month, and on a third property about $600 per year. He maintains, however, that all such proceeds "are subject to a security agreement executed by Frances Opelle to Nettie Cressman." Mrs. Cressman is the mother of William Opelle.

Assuming that the two security agreements executed in favor of Mrs. Opelle's mother-in-law were not merely sham transactions designed to shelter income from creditors, the plaintiffs would still seem to be entitled to receive the rents in satisfaction of their judgment. A.S.C.A. § 37.1005 provides that "[i]n the absence of an agreement to the contrary, the mortgagor . . . is entitled to the use or possession of it until default." Although one of the security agreements transfers title to "the said real estate . . . and the rents, issues and profits thereof" to Mrs. Cressman, this transfer of legal title was clearly intended as a security device rather than as a conveyance of the present right to possess the land and the rents. Indeed, the agreement also provides that Mrs. Opelle "may retain possession of . . . and may use and employ" the land. Since Mrs. Opelle and not Mrs. Cressman has the present right to receive the rents, their garnishment by the creditors of Mrs. Opelle does not interfere with the rights of Mrs. Cressman.

Our conclusion is bolstered by the evidence of what has actually been happening to the rent money. Mr. Alai testified that he makes out the checks jointly to Mrs. Opelle and Mrs. Cressman, and mails them to Mrs. Opelle. A statement prepared by a California accountant employed by Mrs. Cressman indicates that substantially less than all of the

-156-

rent money received by Mrs. Opelle has been applied to the balance on her debt to Mrs. Cressman.

Although it is possible that Mrs. Opelle is in default on her debt to Mrs. Cressman, this has not been alleged by Mr. Alai and we have insufficient evidence from which to conclude that a default has taken place. If this were alleged, we would need to decide whether the security agreement was a fraudulent conveyance designed to defeat the interests of other creditors. This would require evidence, inter alia, of the terms on which Mrs. Cressman acquired the note from the original creditor and of the consideration (if any) that she gave Mrs. Opelle in exchange for the execution of mortgages to secure pre-existing obligations that had theretofore been unsecured.

Deciding whether Mrs. Cressman was in default on the loan would raise similar questions, principally concerning whether Mrs. Cressman has tried to collect the debt in ways that inconvenience her daughter-in-law and not just her daughter-in-law's other creditors. If Mrs. Opelle's relations with Mrs. Cressman are to be interposed as obstacles against the collection of debts owed to third parties, they must be shown to have been conducted at arm's length.[1]

Accordingly, Mr. Alai should surrender to the Clerk of Courts the rent money in his possession, as well as all rents received in the future and any other property belonging to Mrs. Opelle. The clerk will transfer the funds to the plaintiffs.

It is so ordered.

---

[1] This is of course quite possible; indeed, plaintiff Margaret Landrigan is herself a sister of Mrs. Opelle. It appears from the present record, however, that Mr. Alai, the Opelles, and Mrs. Cressman are on one side and the Landrigans on the other. Fortunately, A.S.C.A. § 37.1005 makes it unnecessary for us to characterize the transactions among these parties on the basis of the sketchy evidence now before us.